UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KENNETH L. WEAVER, individually and as personal representative of the estate of DEVIN ANDREW WEAVER, and BARBARA WEAVER,<br><br>        Plaintiffs,<br><br>    v.<br><br>MAUREEN HANSON, in her individual capacity, and GEORGE JACKSON, in his individual capacity,<br><br>        Defendants. | NO. CV-06-3022-EFS<br><br>**ORDER GRANTING IN PART, DENYING IN PART, AND HOLDING IN ABEYANCE IN PART DEFENDANTS' MOTION TO DISMISS AND DENYING AS MOOT WITH LEAVE TO RENEW THE REQUEST FOR SUMMARY JUDGMENT** |

    Before the Court, without oral argument, is Defendants Maureen Hanson and George Jackson's Motion to Dismiss or for Summary Judgment (Ct. Rec. 47). At a Status Conference on March 20, 2007, Defendants advised the Court they were withdrawing their request for summary judgment at this stage, but are pursuing their motion to dismiss. After reviewing the submitted material and relevant authority, the Court is fully informed. The Court grants Mr. Jackson's motion to dismiss on the basis of qualified immunity, grants in part and holds in abeyance in part Ms. Hanson's motion to dismiss, and denies as moot the request for summary judgment.

///
///

ORDER ~ 1

**A.   Factual Background**

Plaintiffs' son Devin Weaver died in the Thirtymile Fire. In a prior lawsuit against the fire shelter manufacturers, the defendants argued they were protected from liability based on the mandatory government contract specifications defense (i.e., that the manufacturers were immune from suit because the hazards posed by the fire shelters were due to standards specified by the government agency in the contract). According to the Complaint in this action, Mr. Jackson was aware of United States Forest Service (USFS) tests on the shelters, which revealed that products used in the shelters could decompose and gas the occupant, but that he failed to disclose this information to the medical examiner, who, as a result, failed to test for toxic gas inhalation as a possible cause of death of Devin Weaver. The Complaint also alleges that Ms. Hanson acted as a liaison to the family members and returned certain personal items to the firefighters' families, but that Ms. Hanson destroyed remaining articles from the storage facility, including the fire shelters. Without this material evidence, Plaintiffs settled their claims against the fire shelter manufacturers in the prior lawsuit for less damages than claimed.

**B.   Legal Authority and Analysis**

Defendants ask the Court to dismiss the claims against Mr. Jackson and Ms. Hanson on the grounds that Plaintiffs' *Bivens* claims are barred by qualified immunity because the allegations in the Complaint do not establish a violation of a clearly established constitutional right that can be remedied. Defendants also argue the Court lacks personal jurisdiction over Mr. Jackson. Plaintiffs oppose the motion, contending

Mr. Jackson and Ms. Hanson deprived Plaintiffs of their right of access to the courts, as guaranteed by the Fifth Amendment's Due Process clause, in connection with their underlying claims in the prior lawsuit, and that personal jurisdiction exists over Mr. Jackson.

**1. Personal Jurisdiction.**

A federal court must have personal jurisdiction over the defendants in a court matter before it can adjudicate a case; accordingly, the Court analyzes the jurisdictional issue prior to the other matters. Because there is no applicable federal statute governing personal jurisdiction, the Court applies Washington law. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004); FED. R. CIV. P. 4(k)(1)(A). Washington's long-arm statute permits the exercise of general or specific personal jurisdiction to the full extent of the due process clause of the United States Constitution. *Shute v. Carnival Cruise Lines*, 113 Wash. 2d 763 (1989), *rev'd on other grounds*, 499 U.S. 585 (1991). Plaintiff concedes general personal jurisdiction is lacking over Mr. Jackson, who is a resident of Montana, but contends specific personal jurisdiction exists.

For a court to exercise personal jurisdiction over a nonresident defendant, the defendant must have at least "minimum contacts" with the relevant forum such that the exercise of jurisdiction "does not offend the notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) (internal quotation marks and citation omitted); *Lake v. Lake*, 817 F.2d 1416, 1420 (9th Cir. 1987). A three-pronged test is used to determine if specific personal jurisdiction is met:

ORDER ~ 3

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Lake*, 817 F.2d at 1421; *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). The plaintiff has the burden of establishing specific personal jurisdiction by making a *prima facie* showing of jurisdictional facts to withstand the motion to dismiss. *Schwarzenegger*, 374 F.3d at 800; *Atl. Trading Co. v. M/V Main Exp.*, 758 F.2d 1325, 1327 (9th Cir. 1985).

The first prong of the specific personal jurisdiction test discusses both purposeful availment and purposeful direction. *Schwarzenegger*, 374 F.3d at 802. Because this is an action sounding in tort and there is no allegation that Mr. Jackson availed himself of the privileges of conducting activities within Washington, the purposeful direction standard applies. *See id.* A separate three-part "effects" test is used to determine whether a defendant purposefully directed activities with the forum or a resident thereof: (1) defendant committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state. *Id.* at 803 (quoting *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002), which in turn cites to *Calder*, 465 U.S. 783). The Complaint alleges:

> Knowing of the problems associated with the thermal stability, the amounts of decomposition products and the overall fire properties of the fire shelters, Defendant George Jackson concealed material information from the [USFS Employees which

ORDER ~ 4

       included Devin Andrew Weaver] and Medical Examiner who autopsied Devin Weaver and others.

(Ct. Rec. 1 at IV ¶¶ 11 & 12.) In Washington, "knowingly" doing an act is equivalent to "intentionally" doing an act, *see Washington v. Travis*, 1 Wash. App. 971, 974 (1970); accordingly, the Court concludes Mr. Jackson purportedly committed an intentional act/omission of concealing information.

    The Court also concludes the Complaint adequately alleges Mr. Jackson's intentional act/omission was aimed at Washington given that the autopsies were performed by the medical examiner in Washington and that the harm resulting from the lack of a toxic gasses evaluation would likely be suffered by the Weavers in Washington. (Ct. Rec. 1 § III ¶ 6 & § IV § 15.) Accordingly, Mr. Jackson purposefully directed his activities to Washington and its residents, satisfying the first prong of the specific personal jurisdiction test.

    The Court finds the other two prongs are satisfied as well. Plaintiffs' claims in this action arise out of and relate to Mr. Jackson's forum-related activities. Lastly, the Court finds the exercise of personal jurisdiction over Mr. Jackson comports with the notions of fair play and substantial justice given that Mr. Jackson served as a team investigator of the Thirtymile Fire, which resulted in the death of four firefighters, and his investigative role brought him to the Eastern District of Washington. For these reasons, the Court concludes, after focusing on the purported relationship between Mr. Jackson, Washington, and this litigation, the Court may exercise personal jurisdiction over Mr. Jackson; Defendants' motion is denied in part. *See Calder v. Jones*,

ORDER ~ 5

465 U.S. 783, 788 (1984) (citing *Shaffer v. Heitner*, 433 U.S. 310, 316 (1945)).

### 2. Qualified Immunity

Plaintiffs are pursuing a *Bivens* action against Defendants. *Bivens* allows a plaintiff to seek damages against a federal government official if the plaintiff can demonstrate that the federal official violated a clearly established constitutional right of which a reasonable person would have known. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Case law and rules for actions brought pursuant to 42 U.S.C. § 1983, including the immunities recognized, are applicable to *Bivens* actions. *F.E. Trotter, Inc. v. Watkins*, 869 F.2d 1312, 1318 (9th cir. 1989). Therefore, Defendants ask the Court to grant them qualified immunity. At this stage, the Court must view the facts as alleged by Plaintiffs as true and construe them in the light most favorable to Plaintiffs. *See Harrell v. Cook*, 169 F.3d 428, 431 (7th Cir. 1999). Under this standard, the Court analyzes whether qualified immunity is appropriate.

The parties do not dispute that there is a clearly established constitutional right to meaningful access to courts, *see Delew v. Wagner*, 143 F.3d 1219, 1222 (9th Cir. 1998); *Chambers v. Baltimore & Ohio R.R. Co.*, 207 U.S. 142 (1907); however, the parties dispute whether the Complaint's allegations sufficiently allege a violation of this constitutional right. Defendants maintain the Complaint fails to allege denial of access claims against Mr. Jackson and Ms. Hanson because no court has ever found that government officials have an affirmative duty

ORDER ~ 6

under the constitution to disclose information of which they are aware and which may be helpful to a party's anticipated or pending lawsuit. Defendants contend that in order for the Complaint to survive the motion to dismiss it needed to have alleged (1) Mr. Jackson failed to provide information to the medical examiner for the express purpose of interfering with the Weaver's products liability case and (2) Ms. Hanson destroyed the fire shelters for the express purpose of interfering with the Weavers' products liability case. As explained below, the Court grants Mr. Jackson qualified immunity, but denies Ms. Hanson qualified immunity at this stage.

        a.   <u>Mr. Jackson</u>

The Court recognizes the very action at issue need not have been previously held unlawful, however, the contours of the right to access must have been sufficiently clear so that Defendants understood what they were doing violated the right of access to courts. *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Denial of meaningful court access decisions have emphasized that the official must engage in affirmative conduct and/or fail to act where there is a duty to act. Based on the case law in July 2001, when Mr. Jackson talked to the medical examiner, there was no clearly established constitutional right which imposed upon government officials a duty to affirmatively disclose information of which they were aware and which might be helpful to a party's pending or anticipated litigation. The Third Circuit succinctly summarized the requirements of a denial of access claim:

> [the government official] *wrongfully and intentionally* conceal[s] information crucial to a person's ability to obtain redress through the courts, and do[es] so *for the purpose of frustrating that* right, and that concealment and the delay

ORDER ~ 7

> engendered by it substantially reduce the likelihood of one's obtaining the relief to which one is otherwise entitled.

*Gibson v. Superintendent of N.J. Dep't of Law & Pub. Safety-Div. of State Police*, 411 F.3d 427, 445 (3d Cir. 2005) (quoting *Swekel v. City of River Rouge*, 119 F.3d 1259, 1262-63 (6th Cir. 1997)) (emphasis in *Gibson*); *see also Delew*, 143 F.3d at 1222-23; *Crist v. Leippe*, 138 F.3d 801 (9th Cir. 1998) (destruction of evidence must be intentional). Applying these principles, the Second Circuit in *Barrett v. United States*, 798 F.2d 565 (2d Cir. 1986), denied government prosecutors qualified immunity at the summary judgment stage given that there was sufficient evidence to show that the prosecutors "crossed the line from mere silence to active interference with the estate's rights in its pending Court of Claims action." *Id.* at 576.

Unlike in *Barrett*, there is no allegation that Mr. Jackson "actually interfered" with Plaintiffs' litigation. The Complaint fails to allege any affirmative conduct by Mr. Jackson; rather it alleges Mr. Jackson "concealed material information" by failing to disclose such to the medical examiner, i.e. an omission. The Court concludes there is no allegation that Mr. Jackson "crossed the line from mere silence to active interference," *see Barrett*, 798 F.2d at 576.[1]  Further, there is no

---

[1] Plaintiffs contend Mr. Jackson's conduct resulted in spoliation of evidence, while also acknowledging that Washington appellate courts have not yet recognized an independent tort of spoliation. Plaintiffs cite to a number of districts who have recognized such a tort, *see Smith v. Atkinson*, 711 So. 2d 429 (Ala. 2000), and *Hanna v. Heeter*, 584 S.E.2d 560 (W. Va. 2003); yet, there are also districts that have not, *see*

ORDER ~ 8

allegation that Mr. Jackson had an affirmative duty to investigate the cause of Devin Weaver's death, unlike the affirmative duty the law enforcement defendant in *Swekel* had to investigate the theft. 119 F.3d at 1262-63. Plaintiffs do argue that Mr. Jackson had an affirmative duty to disclose the information he knew about the fire shelters to the medical examiner, relying upon *Van Dinter v. Orr*, 157 Wash. 2d 329, 334 (2006). However, *Van Dinter* discussed an individual's obligation to disclose information in a business transaction setting; this is not the situation alleged in the instant Complaint.

Accordingly, the Court concludes Mr. Jackson's alleged conduct did not violate the clearly established right of meaningful access to courts. Mr. Jackson's motion for dismissal based on qualified immunity is granted.

        b.    <u>Ms. Hanson</u>

Plaintiffs seek damages against Ms. Hanson based on different facts than Mr. Jackson. Plaintiffs allege Ms. Hanson "[k]nowing of the Plaintiffs' requests for the fire shelter and other information, . . . destroyed the fire shelter that Devin Andrew Weaver died in along with

---

*Cedars-Sinai Med. Ctr. v. Superior Ct.*, 18 Cal. 4th 1 (Cal. 1998), and *Goff v. Harold Ives Trucking Co., Inc.*, 27 S.W.3d 387 (Ark. 2000). Therefore, at the present time, the Court concludes a tort of spoliation does not exist in Washington. Regardless, whether Mr. Jackson's omission amounted to spoliation is irrelevant to whether his omission was wrongfully and intentionally concealing crucial information under the right to access constitutional claim.

ORDER ~ 9

other evidence which had been preserved by the USFS until the Weaver request for information and production." (Ct. Rec. 1 § IV ¶ 23.) Although the Complaint does not specifically allege Ms. Hanson "wrongfully and intentionally conceal[ed] information crucial" to Plaintiffs' recovery in the underlying lawsuit, the Court concludes, when reading the Complaint as a whole under the dismissal standard, that the Complaint does sufficiently state that Ms. Hanson's affirmative conduct of destroying the fire shelter was done wrongfully and intentionally for the purpose of frustrating Plaintiffs' ability to obtain redress through the courts. Whether Plaintiffs are able to factually establish such is a question for another day. Accordingly, at this stage, Defendant Hanson's motion to dismiss based on qualified immunity is denied.

**3. Remedy**

Defendants maintain the Complaint fails to specify a remedy as is required by *Christopher v. Harbury*, 536 U.S. 403 (2002), and recognized by the Tenth Circuit in *Jennings v. City of Stillwater*, 383 F.3d 1199 (10th Cir. 2004). The Complaint here alleges:

> [Plaintiffs/Estate of Devin Weaver] suffered an economic loss and loss of earning potential exceeding $2,000,000. The Weavers, therefore, settled the underlying case for an amount far less than what they would have been able to prove had evidence not been destroyed but had been preserved. The difference is in excess of any minimum jurisdiction of this court.
> For any other damages allowable under Washington law, including but not limited to damages under the Washington state's general survival statute . . . in the total sum of $1,000,000.

The Court finds this satisfies *Christopher v. Harbury*, 536 U.S. 403, 416 (2001). In *Harbury*, the Supreme Court stated, "when the access claim (like this one) looks backward, the complaint must identify a remedy that may be awarded as recompense but not otherwise available in some suit

ORDER ~ 10

that may yet be brought." *Id.* at 415.  The purpose of such pleading requirement is to give "fair notice to the defendant . . . to hedge against the risk that an access claim be tried all the way through, only to find that the court can award no remedy that the plaintiff could not have been awarded on a presently existing claim." *Id.* at 416.  Here, Plaintiffs satisfied the concern set forth in *Harbury* by alleging that Plaintiffs' economic damages exceed $75,000 and are approximately $2,000,000, and are based on the diminishment in the value of their claim in the prior lawsuit.

The plaintiff in *Jennings*, the plaintiff in *Harbury*, also failed to identify an available remedy.  The Tenth Circuit in *Jennings* stated:

> Plaintiff has not specifically alleged, or presented evidence, that the settlement amount was inadequate on account of the government's actions so as to deny her meaningful relief.  At several points in her appellate briefs, she alludes to such a claim. . . .  But her complaint contains no such allegation, and the record contains no evidence on the point.  Moreover, in light of confidentiality of Plaintiff's settlement, there is no way such a claim could be evaluated.

383 F.3d 1199, 1209.  Here, Plaintiffs did allege a specific sought after remedy in their Complaint.  Like *Jennings* though, Plaintiffs did enter into a confidential settlement.  The Court recognizes the Ninth Circuit allows a district court to review a confidential settlement, *see Ex Parte General Brewing Co. v. Law Firm of Gordon, Thomas, Honeywell Malanca Peterson & O'Hearn*, 694 F.2d 190 (9th Cir. 1982) (District court reviewed settlement agreements *in camera* to determine what attorneys fees requests should be granted.); however, Plaintiffs have not identified whether the instant settlement agreement allows for such judicial review and/or whether the other party to the agreement is agreeable to this Court reviewing the settlement agreement.  Without reviewing the settlement

ORDER ~ 11

agreement, the Court will be unable to perform the "accounting function" to determine the difference between the Weavers' actual settlement recovery and any jury award in this action. Therefore, Defendants' motion is held in abeyance for two weeks to allow Plaintiffs to file exparte a true and correct copy of the settlement agreement for *in camera* review by the Court.

For the above reasons, **IT IS HEREBY ORDERED**: Defendants' Motion to Dismiss or for Summary Judgment **(Ct. Rec. 47)** is **GRANTED IN PART** (qualified immunity for Mr. Jackson), **DENIED IN PART** (personal jurisdiction and Ms. Hanson denied qualified immunity), **HELD IN ABEYANCE IN PART** (Plaintiff shall file *ex parte* a copy of settlement agreement within one week of entry of this Order), **and DENIED IN PART WITH LEAVE TO RENEW following discovery** (request for summary judgment).

**IT IS SO ORDERED.** The District Court Executive is directed to:

(A)  Enter this Order; and

(B)  Provide copies to the parties.

**DATED** this 30th day of August 2007.

                    S/ Edward F. Shea
                    EDWARD F. SHEA
                United States District Judge

Q:\Civil\2006\3022.dismiss.final.wpd